IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| JACKIE HAMBY | § | |
| VS. | § | CIVIL ACTION NO. 1:20-CV-185 |
| MARK J. RICHARDS, ET AL. | § | |

<u>REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff Jackie Hamby, a prisoner previously confined at the Hightower Unit of the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se* and *in forma pauperis*, brings this civil rights action pursuant to 42 U.S.C. § 1983 against Mark J. Richards, P.A., and Robert Behrns, M.D. Defendants were employed by The University of Texas Medical Branch at Galveston Correctional Managed Care at the Hightower Unit at the time of the events at issue in this action.

The action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Defendants filed a motion for summary judgment, and Plaintiff has filed a response. The matter is now ripe for review.

<u>Factual Background</u>

Plaintiff alleges he had surgery on his right ankle in November of 2018. On December 5, 2019, Plaintiff was transferred from the Michael Unit to the Hightower Unit, where the defendants are employed as health care providers. Plaintiff claims he continued to have problems with his ankle following the surgery, and that the pain in his foot was worse than it was before the surgery. Plaintiff

states that the defendants were aware he was in pain, but they repeatedly denied his requests to see an orthopedic specialist and they changed his pain medication to less effective medications than the medication prescribed by the orthopedic surgeon.

Plaintiff states that he suffers from acid reflux and stomach pain, and that he has been passing blood. Plaintiff alleges Defendant Richards changed his medication, and the new medication did not manage Plaintiff's symptoms. Plaintiff claims he requested Defendant Richards to refer him to a gastroenterologist, but Defendant Richards told Plaintiff that Defendant Behrns would have to give him the referral. Plaintiff alleges Defendant Richards refused to discuss Plaintiff's stomach issues with him, and Defendant Behrns refuses to refer him to a specialist for his stomach problems.

Defendants' Motion for Summary Judgment

Defendants contend that Plaintiff has not demonstrated they were deliberately indifferent to his serious medical needs because there is no evidence that Defendants subjectively intended to harm Plaintiff. Defendants assert that the evidence shows that Plaintiff merely disagreed with his medical treatment. Defendants also contend that they are entitled to qualified immunity.

In support of the motion, Defendants submitted Plaintiff's medical records[1] (Exhibits A and B), Plaintiff's grievance records (Exhibit C), and the affidavit of Glenda M. Adams, M.D., M.P.H. (Exhibit D).

Plaintiff's medical records show that Timothy Hampton conducted a health transfer screen on December 5, 2019, the day he arrived at the Hightower Unit. The health transfer screen was later reviewed by Defendant Behrns. (Doc. #53-1 at 378-80.) Plaintiff also filed a sick call request asking

---

[1] Defendants submitted 688 pages of Plaintiff's medical records. Many of the medical records concern medical issues that are not at issue in this action. Only the relevant records are summarized in this Report and Recommendation.

for his "keep on person" medications to be filled and complaining of pain in his foot and ankle. (Doc. #53-1 at 377.) Plaintiff was scheduled for nurse sick call.

On December 17, 2019, Plaintiff saw Defendant Richards for multiple health issues, including pain in his right foot and ankle. (Doc. #53-2 at 127-29.) Plaintiff requested renewal of his prescription for Ibuprofen, which Defendant Richards denied due to the risk of the medication causing other health problems. Defendant Richards' plan was for Plaintiff to return to the clinic to see Defendant Behrns to address questions and for a follow-up examination of Plaintiff's foot and ankle, and review of x-rays and laboratory results. Defendant Richards prescribed Plaintiff Omeprazole and Acetaminophen. He also prescribed Plaintiff Carbamazepine for chronic pain management. (Doc. #53-1 at 239-40; Doc. #53-2 at 129.) Finally, Defendant Richards ordered x-rays of Plaintiff's right foot and bloodwork. (Doc. #53-2 at 129.)

The x-rays of Plaintiff's ankle and foot were taken on December 20, 2019. (Doc. #53-1 at 257.) The x-ray findings were as follows: "Radiographs of the right foot and ankle demonstrate no displaced fractures. The joint spaces in the foot are preserved. Posttraumatic remodeling of the lateral and posterior malleoli are seen with mild secondary osteoarthrosis. The ankle mortise is anatomic. A small anterior volume ankle joint effusion is present." (Doc. #53-1 at 257; Doc. #53-3 at 3-6.)

On December 21, 2019, Plaintiff submitted a sick call request in which he asked to be sent to a specialist for his foot. (Doc. #53-1 at 372.) The reviewing medical provider noted that Plaintiff would be scheduled for a nurse sick call.

On December 27, 2019, Plaintiff saw Defendant Richards via a telehealth appointment. (Doc. #53-2 at 124-26.) Defendant Richards discussed the results of Plaintiff's foot and ankle x-rays

with him.  Defendant Richards noted in the medical records that Plaintiff had already been referred to Defendant Behrns, and that Plaintiff should keep the scheduled appointment.  Defendant Richards prescribed medications to treat Plaintiff's allergies.  (Doc. #53-1 at 236-37; Doc. #53-2 at 125-26.)

On January 9, 2020, Plaintiff had a telehealth appointment with Defendant Behrns concerning pain in his right foot and back problems.  (Doc. #53-2 at 119-123.)  Defendant Behrns noted that Plaintiff walked with a cane, but he was not wearing his compression stockings.  Defendant Behrns reviewed x-rays of Plaintiff's foot from December 20, 2019, and from May 16, 2019.  Defendant Behrns opined that the right foot symptoms might be associated with remote nerve damage, and he noted that Plaintiff was on medication to treat gastro-esophageal reflux disease.  Defendant Behrns prescribed Plaintiff Carbamazepine for pain.  (Doc. #53-1 at 235; Doc. #53-2 at 123.)

On February 3, 2020, Plaintiff requested the renewal of his prescription for Acetaminophen. (Doc. #53-1 at 352.)  On February 4, 2020, Defendant Richards renewed the prescription for the medication.  (Doc. 53-1 at 231, 352.)

On February 24, 2020, Defendant Richards prescribed Plaintiff Prednisone and Minocycline for ten days.  (Doc. 53-1 at 230.)

On March 4, 2020, Plaintiff submitted a sick call request stating that he was passing blood. (Doc. #53–1 at 350.)  Plaintiff was directed to go to nurse sick call.  (Doc. #53-1 at 350.)

On March 9, 2020, Plaintiff filed a sick call requesting renewal of his prescription for Acetaminophen. (Doc. #53-1 at 348.)  Defendant Richards renewed the medication for thirty days. (Doc. #53-1 at 229, 348.)  That same day, Plaintiff filed a second sick call request asking to see the provider because the pain in his foot was getting worse.  (Doc. #53-1 at 349.)  The response to Plaintiff's sick call request was to go to nurse sick call.  (Doc. #53-1 at 349.)

On March 14, 2020, Plaintiff filed a sick call request complaining of severe pain from his back down to his right knee. (Doc. #53-1 at 347.) Plaintiff was seen at nurse sick call that day. (Doc. #53-1 at 347.)

On March 17, 2020, Plaintiff had a telehealth visit concerning his reports of rectal bleeding and gastrointestinal complaints. (Doc. #53-2 at 109.) Plaintiff was issued a Fecal Immunochemical Test, with instructions on how to use the test. Norma Fuentes, a nurse practitioner, prescribed Plaintiff 800 mg of Ibuprofen to be taken twice daily, and advised Plaintiff that the medication could cause bleeding. (Doc. #53-1 at 225, 347; Doc. #53-2 at 109.)

Defendant Richards prescribed Acetominophen, twice daily for thirty days, on April 13, 2020. (Doc. #53-1 at 223.)

On April 15, 2020, Ms. Fuentes prescribed Plaintiff Docusate Sodium capsules in response to Plaintiff's complaints of "belly pain." (Doc. #53-1 at 221-22.)

Russell Hayes, a physician assistant, prescribed Plaintiff Duloxetine and Carbamazepine on April 22, 2020. (Doc. #53-1 at 219-20.)

Plaintiff saw Mary McBride, a licensed vocational nurse, on April 23, 2020. (Doc. #53-1 at 218.) Ms. McBride gave Plaintiff Magnesium Hydroxide to take daily for the next three days.

Ms. Fuentes conducted a chart review on April 28, 2020, in response to a sick call request Plaintiff filed about being constipated. (Doc. #53-2 at 99-100.) Ms. Fuentes noted that Plaintiff was already taking Colace, and she prescribed Lactulose for thirty days.

Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled

to judgment as a matter of law." FED. R. CIV. PRO. 56(a). A fact is material if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 427 (5th Cir. 2003). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Instone Travel Tech*, 334 F.3d at 427.

The party seeking summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 994 F.3d 704, 708 (5th Cir. 2021); *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003).

Because summary judgment is a final adjudication on the merits, courts must employ the device cautiously. *Hulsey v. Texas*, 929 F.2d 168, 170 (5th Cir. 1991). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Naranjo v. Thompson*, 809 F.3d 793, 806 (5th Cir. 2015) (*quoting Murrell v. Bennett,* 615 F.2d 306, 311 (5th Cir. 1980)).

Analysis

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, causes a person to be deprived of a federally-protected constitutional right. *Gomez v.*

*Toledo*, 446 U.S. 635, 640 (1980); *Phillips v. Monroe Cnty.*, 311 F.3d 369, 373 (5th Cir. 2002). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured . . . .

42 U.S.C. § 1983. In order to state a cause of action under § 1983, a plaintiff must allege two elements. "First, the Plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

*Qualified Immunity*

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is intended to protect all officials, except those who are plainly incompetent or who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Federal courts use a two-part test to determine whether the defendants are entitled to qualified immunity. *Freeman v. Texas Dep't of Crim. Just.*, 369 F.3d 854, 863 (5th Cir. 2004). The first prong of the test requires the court to determine whether the plaintiff's allegations, if true, establish a constitutional violation. *Hope*, 536 U.S. at 736; *Freeman*, 369 F.3d at 863. If a constitutional right was violated, the court must decide whether the right was clearly established at the time of the violation. *Freeman*, 369 F.3d at 863. Clearly established rights should not be defined broadly. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). "For a

constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Hope*, 536 U.S. at 739 (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The district court has discretion to decide which prong of the two-part test to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In this instance, the court will first determine whether Plaintiff has alleged facts establishing a violation of the Eighth Amendment.

*Deliberate Indifference to Medical Needs*

Although the Eighth Amendment does not explicitly mandate a certain level of medical care for prisoners, the cruel and unusual punishment clause has been interpreted to impose a duty on prison officials to provide inmates with adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999). A prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 754 (5th Cir. 2001).

An Eighth Amendment claim consists of two components--one objective and one subjective. *Farmer*, 511 U.S. at 839. To satisfy the objective requirement, Plaintiff must prove that he was exposed to a substantial risk of serious harm. *Id.* at 834; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002). Plaintiff must also demonstrate that the defendants were deliberately indifferent to that risk. *See Farmer*, 511 U.S. at 834; *Lawson*, 286 F.3d at 262. The deliberate indifference

standard is a subjective inquiry; Plaintiff must establish that the defendants were aware of an excessive risk to Plaintiff's health or safety, and yet consciously disregarded the risk. *Farmer*, 511 U.S. at 840-41; *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *Stewart*, 174 F.3d at 534.

Mere negligence, neglect, or medical malpractice does not rise to the level of a constitutional violation. *Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."); *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) ("[A]llegations of malpractice or negligence will never state a claim under the Eighth Amendment."); *Stewart*, 174 F.3d at 534. Nor does an inmate's disagreement with his medical treatment amount to an Eighth Amendment violation. *Stewart*, 174 F.3d at 537; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). "Rather, the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

The competent summary judgment evidence does not support a conclusion that either Defendant deliberately disregarded a substantial risk of harm to Plaintiff caused by his gastrointestinal issues or ankle and foot pain. The medical records reflect that Plaintiff was seen for both conditions by multiple medical providers, including the defendants, from the time he was transferred to the Hightower Unit until he filed this action on April 20, 2020. Plaintiff was prescribed various pain relievers for his foot and ankle pain and medications to treat his gastrointestinal issues. Plaintiff was dissatisfied with the pain medications because he felt they did not manage his pain as well as Ibuprofen, but the medical records show that the medical providers were concerned about potential side effects, including bleeding, caused by Ibuprofen. Plaintiff's

argument that Defendants should have referred him to specialists immediately instead of treating him with medication first is a disagreement over medical care that does not rise to the level of an Eighth Amendment violation. In this case, Defendants' conduct does not rise to the level of egregious intentional conduct required to satisfy the deliberate indifference standard. *See Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir. 2006).

Because Plaintiff has not shown that Defendants violated his clearly-established rights under the Eighth Amendment, Defendants are entitled to qualified immunity. As a result, Defendants' motion for summary judgment should be granted.

## Recommendation

Defendants' motion for summary judgment should be granted.

## Objections

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from the entitlement of *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United*

*Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

SIGNED this 18th day of August, 2022.

_____
Zack Hawthorn
United States Magistrate Judge